UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ALICE BLANTON,

    Plaintiff,

v.                                                             Case No. 1:19-cv-162-AW-HTC

ANDREW M. SAUL,
 COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Alice Blanton's *pro se* complaint for review under 42 U.S.C. § 405(g) of a decision of the Commissioner of Social Security ("Commissioner") regarding Blanton's entitlement to disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34. ECF Doc. 1. The case was referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v. Although the Commissioner found the claimant, Alice Blanton, to be entitled to disability benefits, that determination was based on an onset date of August 18, 2015. Blanton appeals the determination of that onset date and contends her onset date was in 2010.

Upon review of the record before the Court, the undersigned concludes the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed, as to the disability onset date.

PROCEDURAL HISTORY

Blanton protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB") on September 22, 2015. T. 146-52.[1] In the application, Blanton alleged an onset date of May 31, 2010. T. 179. The application was initially denied, but approved upon reconsideration. T. 39-48, 51-69. The onset date determined upon reconsideration was March 1, 2016. T. 68.

Blanton requested a hearing before the Administrative Law Judge ("ALJ") as to the onset date, and a hearing was held on May 2, 2018. T. 32-38, 90. During the hearing, at the suggestion of the ALJ, Blanton agreed to amend her onset date to August 18, 2015. T. 37. Blanton was represented by counsel at the hearing. T. 32.

On May 8, 2018, the ALJ issued a favorable decision, finding Blanton disabled as of August 18, 2015. T. 19-29. Blanton filed an appeal with the Appeals Council ("AC") and, on March 26, 2019, the AC denied Blanton's request for review of the ALJ's decision. T. 7-11. Blanton sought an extension of time from the AC

---

[1] The administrative record, as filed by the Commissioner, consists of 12 volumes and has 768 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number. The administrative record is attached to ECF Doc. 11.

to file a civil suit, and on July 18, 2019, the AC granted Blanton thirty (30) additional days. T. 2-4. On August 16, 2019, Blanton filed this action. ECF Doc. 1. This case is now ripe for review. 42 U.S.C. § 405(g).

## RELEVANT MEDICAL HISTORY

Blanton, born in 1952, was 65 years old at the time of the AJL's decision in 2018. T. 32, 146. She is college educated and has worked as an educator and trainer. T. 184, 653. The ALJ determined Blanton suffers from the following disabilities: visual disturbance and disorders of the spine. T. 25. Plaintiff's medical history is set forth in the ALJ's decision. Below is a summary of information pertinent to the issue in this appeal.[2]

In 2007 Blanton, who was employed by Apple at the time as a national trainer for teachers, contracted a serious eye infection, which Dr. Tuli diagnosed as Acanthamoeba. T. 541, 652.[3] Although Dr. Tuli was able to cure the infection, it left permanent effects, including cornea scarring and impaired vision. T. 199. Blanton continued treatment with Dr. Tuli until 2010. T. 524-55. Dr. Tuli told Blanton she was a candidate for a cornea transplant. T. 518, 524. Also, in 2010,

---

[2] Although Blanton also suffers from disorders of the spine, namely lower back pain, the undersigned only summarized the medical evidence relating to Blanton's visual disturbance because it is that condition on which Blanton bases her onset date.

[3] Although Blanton indicates the diagnoses came in 2008 (Tr. 199), the medical records first reference Acanthamoeba on December 20, 2007. Tr. 541.

Blanton quit her job with Apple because she had concerns driving in unfamiliar cities with her decreased vision.  T. 652.

Blanton continued to work when she could as an independent consultant until 2015, when she applied for disability.  T. 173.  Also, in 2015, Blanton returned to see Dr. Tuli.  T. 518.  Her first visit was on August 18, 2015.  T. 518.  Dr. Tuli's treatment notes for that visit indicate Blanton reported her vision in both eyes was distorted and it was difficult to focus.  T. 518.  Dr. Tuli writes Blanton reported this issue started five (5) months ago.  T. 518.  She also sought at that time more information about a cornea transplant.  T. 518.  Dr. Tuli also notes Blanton had not seen any medical provider for her eyes since her last visit with him in 2010.  T. 518.

In November 2015, Blanton was seen at the Low Vision Eye clinic.  T. 619. The treatment notes for Dr. Cameron on November 19, 2015, indicate Blanton reported working as a trainer with teachers on how to design lessons using technology in the classroom and she is able to function with computers by increasing the font size.  T. 619.  She also reported driving regularly during the daytime, but not at night.  T. 619.  The notes indicate Blanton was not using any visual aids and her vision was improved by the glasses she was prescribed that day.  T. 624.  Dr. Cameron also completed a Vision Medical Source Statement indicating Blanton needs additional time to read documents.  T. 636.  When asked to describe any other limitation that would affect Blanton's ability to work at a regular job on a sustained

1:19-cv-162-AW-HTC

basis, Dr. Cameron wrote "will need more frequent breaks from reading materials." T. 637.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The ALJ utilizes the following five-step analysis. 20 C.F.R. § 404.1520(a), to determine whether a claimant qualifies for disability benefits:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

1:19-cv-162-AW-HTC

"An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving she is disabled, and, "consequently [s]he is responsible for producing evidence in support of he[r] claim." *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## THE ALJ'S DECISION

In performing the five-step analysis, the ALJ first determined Blanton had "not engaged in substantial gainful activity since August 18, 2015, the amended alleged onset date." T. 25. Accordingly, the ALJ proceeded to Step Two, finding Blanton had the following severe impairments: "visual disturbance and disorders of the spine." T. 25. The ALJ then proceeded to Step Three and found that none of Blanton's impairments, considered singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ...." T. 26.

Next, the ALJ determined Blanton had the residual functional capacity ("RFC"), to preform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional computer use or reading." T. 26. Based on Blanton's RFC, and relying on the testimony of a vocational expert, the ALJ found at Step Four that Blanton could not return to any of her past relevant work. T. 28. The ALJ then proceeded to Step Five and determined, based on Blanton's age, education, prior work experience, and RFC, as well as the testimony of the VE, there were "no jobs that existed in significant numbers in the national economy" that Blanton could perform. T. 28. As a result, the ALJ concluded Blanton was disabled since August 18, 2015. T. 29.

As stated above, the ALJ's determination regarding Blanton's disability status is not in dispute. Rather, the only issue in dispute is whether Blanton became disabled on August 18, 2015, her amended onset date, or in May 2010, as she now contends and as alleged in her initial application.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when

1:19-cv-162-AW-HTC

convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

## ANALYSIS

As set forth above, Blanton agreed to amend her onset date at the hearing to August 18, 2015. The following relevant exchange regarding the onset date took place at the hearing:

> ALJ: Ms. Blanton, as I know you are aware, there has been some discussion about a possible amended onset date of August 18, 2015. This was after my suggestion, based on my

review of the medical records. I want to make sure you understand that if we went through a full hearing, it's possible I might do exactly that. It's possible I might find an earlier date was supported, or I might find a later date, or no date is supported. When I say, "No date," I'm not talking about taking away your current disability payments. I'm not looking at that. I'm just looking at the period from your alleged onset date, until you started receiving benefits, March 1, 2016. So, anyway, this was a suggestion of mine. And, I understand at this point, that at this point, that is something you would like to do, is that correct?

CLMT: Yes, I would like to, if I can. I appreciate what you're doing, judge, but I just wanted to state my story about why I waited until September to actually apply.
ALJ: Okay. Well, I will let you do that, but let me just explain just a little bit more first.
CLMT: Okay.

ALJ: Even though the alleged onset date is May 31, 2010, since you didn't file until September 2015, the earliest you could receive benefits would be one year before September 2015.
CLMT: I know that.

```
ALJ: So, even though my suggestion is a number of years
after your alleged onset date, a lot of those years you
couldn't be paid for, no matter what I found in the case.
CLMT: Right, I understand.
ALJ: So, it's not quite as big of a change as it might look
like on the surface.  And, I guess you are nodding, and
that was already explained to you?
CLMT: Yes.
```

T. 32-34.

At this point in the hearing, Blanton was placed under oath and testified regarding the history of her eye condition and the fact that it caused her to lose her career in May 2010.  T. 34-36.  She testified about trying to continue working on her own, locally, after realizing she could not be a national consultant anymore.  T. 34.  Blanton explained she decided to hold off on the cornea transplant in 2010 because the doctor told her it did not matter when she got it done since her vision was not going to change due to the scar.  T. 35.  She also testified she went to the doctor in August 2014[4] and said "I can't do this.  I've got to go on disability," because "It's not going to work.  My eye is so bad."  T. 35.  Blanton explains, her vision issues has been going on since 2010 and tells the ALJ "[m]y disability did not start in August 2015."  T. 36.

---

[4] Although Plaintiff testified that she went to the doctor in August 2014, the medical record show this occurred in August 2015.  T. 518.

1:19-cv-162-AW-HTC

The ALJ then tells Blanton he understands her disability started before August 2015, but what he was dealing with "is really the evidence became so bad, that work became not possible," and explains the date for that "seemed like something that jumped out from the medical records", but that "it's up to [Blanton]" if she wants to go with August 18, 2015.  T. 36.  Otherwise, "we'll do a full hearing, and we'll just see what happens."  T. 36-37.  Blanton responds "No, I guess I'll just do the August 15."  T. 37.

Despite the above colloquy, Blanton argues she should now be afforded a full hearing regarding her onset date so she can point out to the ALJ that he misinterpreted the medical records.  ECF Doc. 15 at 3.  Blanton contends she was not given enough time to "explain the rational for AOD of May 2010 to date of disability in September 2015."  *Id.*

As an initial matter, the undersigned finds that despite the ALJ's suggestion for Blanton to amend her onset date to August 18, 2015, he did not require her do so and made clear to her she could have a full hearing, which she declined.  There is no indication in the record Blanton was denied the opportunity to be heard or to a full hearing.  To the contrary, as the above exchange indicates, Blanton was allowed to explain her disability, that it started in 2010, and why she did not seek disability until 2015.  T. 34-36.  Her testimony on that issue spanned three pages of transcript.  T. 34-36.

1:19-cv-162-AW-HTC

Also, Blanton was represented by counsel and at no time did the ALJ shorten, prevent, or inhibit counsel from making any arguments in favor of an onset date in May 2010. Thus, although "it would be improper for [an] ALJ to refuse to award [a claimant] social security benefits based on [a claimant's] refusal to amend his onset date," that is certainly not what happened here, and Blanton makes no such allegation. *Lindsey v. Barnhart*, 161 F. App'x. 862, 870 (11th Cir. 2006); *see also Moise v. Comm'r of Soc. Sec.*, 404 F. App'x. 424, 426 (11th Cir. 2010). Regardless, such conduct (even had it occurred) would not raise any "fundamental due process concerns that would warrant remanding th[e] case for another administrative hearing." *Id.*

Blanton argues she was confused and did not understand the ALJ's suggestion and recites an off-the-record, privileged communication she had with her counsel immediately prior to the hearing as evidence. ECF Doc. 15 at 2. However, as the Commissioner points out, on review, this Court is limited to the certified administrative record in determining whether the ALJ's decision is supported by substantial evidence, and Blanton's off record, privileged communications with counsel are not part of that record. *See Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985) (in social security cases, reviewing courts are limited to the certified administrative record in examining the evidence); *see also, Mosley v. Astrue*, 2008 WL 3982508, at *7, n. 5 (M.D. Fla. Aug. 25, 2008) ("Discussions outside the record

1:19-cv-162-AW-HTC

are not subject to review by this Court."). Blanton's communications with her counsel are not part of the administrative record.

Although Blanton clearly regrets having decided to amend her onset date and having failed to present evidence to the ALJ to support an earlier onset date, Blanton had a meaningful opportunity to present her case, and regret is not the basis for a remand. *See Cline v. Comm'r of Soc. Sec.*, 2016 WL 4771627, at *10 (M.D. Fla. Sept. 14, 2016) (rejecting argument that the ALJ denied plaintiff a full and adequate opportunity for a hearing because the ALJ had predetermined his onset date and requested he amend it).

Moreover, the undersigned finds the ALJ's determination of the onset date to be supported by substantial evidence. According to the Social Security rulings, which are binding on the SSA and afforded deference by the courts, *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 n.12 (11th Cir. 2020), the disability onset date is "the first day an individual is disabled as defined in the Act and the regulations." Social Security Ruling 83–20; *Trimble v. Saul*; 2020 WL 1349569, at * 3 (N.D. Ala. Mar. 23, 2020); *see also Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 938 (11th Cir. 2014) (per curiam) (unpublished) (citing SSR 83-20, 1983 WL 31249 (Jan. 1, 1983) ) ("[SSR] 83–20 prescribes the policy and procedure by which the Commissioner should determine the onset date of a disability.").

SSR 83-20 explains that the ALJ should consider a claimant's allegations, work history, and medical and other evidence in making this determination. *Wayne Land, Jr. v. Comm'r of Soc. Sec.,* -- F. App'x. --, 2021 WL 72190 (11th Cir. Jan. 8. 2021), citing SSR 83-20, 1983 WL 31249. "It clarifies, however, that allegations and work stoppage are only significant if they are consistent with the severity of the claimant's condition as shown by the medical evidence, which 'serves as the primary element in the onset determination.'" *Id.* Also, "in the case of slowly progressing impairments where it is impossible to obtain medical evidence regarding the precise onset date or where the alleged onset date is far in the past, 'it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.'" *Id.*

Blanton argues her onset date is May 31, 2010, the date alleged in her application because that is when she quit her job with Apple. She relies on a letter from her attorney showing that from 2011 forward she worked at less than substantial gainful activity levels. However, Blanton admits she continued to work until 2015, and it was only then she determined she could no longer work in any capacity as a teacher trainer. In her application, for example, Blanton states she stopped working on May 1, 2015, and reduced her work hours from September 1, 2011 to May 1, 2015. T. 173. That reduction was from 40 hours a week to 30 hours

a month.  T. 173.  The fact that she may have worked much less after 2010 is not dispositive of her onset date.  *See Wayne Land, Jr.*, 2021 WL 72190.

Also, Blanton's inability to work even as a local trainer in 2015 is consistent with the severity of her disabilities in 2015 (rather than in 2010).  Indeed, the medical evidence shows Blanton's vision progressively deteriorated over time, resulting in Blanton seeking treatment again for the first time since 2010, in 2015.  Records from Dr. Tuli in August 2015 show that Blanton companied of vision problems in both eyes, which she reported "started 5 months ago."  T. 518.  It was only at that time Blanton reported "having a hard time seeing well enough to work."  T. 518.  A subsequent eye exam in November 2015, indicated Blanton was still working as a trainer and was able to function with computers by enlarging the font.  T. 620.  She was also driving every day.  T. 620.  She was not using any visual aids and her vision was improved with glasses.  T. 624.

Dr. Cameron's January 2016 vision medical source statement indicated Blanton had general constriction of fields of both eyes, even though the left eye has more visual field.   T. 636.   When asked about limitations, Dr. Cameron recommended Blanton be afforded additional time to read because of increased eye fatigue due to poor vision. T. 636-37. When asked how often Blanton could perform work activities, Dr. Cameron responded as follows:

> Near Acuity – Occasionally
> Far Acuity – Occasionally
> Depth Perception – Rarely
> Accommodation – Unknown
> Color Vision – Constantly
> Field of Vision – Frequently

T. 637.

On reconsideration in April 2016, Blanton reported the change in her medical condition from the initial determination to be "progressing." T. 52. With regard to her vision, she reported double and blurry vision, loss of balance, loss of peripheral vision and depth perception. T. 52. Records from Quinn Eye Center from March 15, 2016, after Blanton had undergone multiple corneal scrapings, recommended Blanton "use specs full time, including for protection" and continue seeing Dr. Tuli for a possible corneal transplant. T. 65, 650.

Blanton also underwent a psychological examination in March 2016. In her report, Dr. Humphreys determined as follows with regard to Blanton's ability to do work related activities:

> Ability to do work related activities: Ms. Blanton's concentration, immediate, recent, and remote memory appeared grossly intact, and she appeared mentally capable of carrying out complex instructions. Her social skills and judgment as well as her ability to carry out simple, repetitive tasks may be affected by her mood and anxiety.

T. 654.

On reconsideration, and relying on the March 2016 records, the Commissioner determined Blanton's onset date to be March 1, 2016, rather than

1:19-cv-162-AW-HTC

May 31, 2010. T. 89. The ALJ, however, considered the medical evidence and suggested an onset date to Blanton more favorable to her than March 1, 2016. The undersigned finds Blanton's "allegations, work history, [] and the medical and other evidence concerning impairment severity", *Santiago v. Berryhill*, 2018 WL 3208076, at *3 (N.D. Ala. June 29, 2018) (citation omitted), support a disability onset date in August 2015.

Although Blanton relies heavily on a letter from Dr. Tuli, indicating Blanton's vision in her right eye because of the corneal scarring was the same in 2010 as it was in 2015, T. 13, Dr. Tuli's letter does not address changes to her vision generally or the vision in her left eye. The medical evidence simply does not support Blanton's position that her disability onset date was May 31, 2010.

Finally, Blanton argues the AC erred in denying her review because there is no indication the AC had the benefit of (1) a letter seeking review or (2) a letter seeking an extension of time to file a civil action. ECF Doc. 15 at 1. While it is unclear whether these letters were received or considered by the AC, as the Commissioner points out, it is also unclear whether these letters were sent to the AC. ECF Doc. 17 at 5. Regardless, the information contained in the letters (with the exception of Dr. Tuli's letter) are merely argument, not evidence, and, even if evidence, was not material or new. Instead, the letters simply rehash the same arguments Blanton, or her counsel had already made to the ALJ or AC.

Remand may occur pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  A remand for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g) is warranted *if* the claimant shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Keeton v. Dep't of Health and Human Servcs.*, 21 F.3d 1064, 1067; *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).[2]

In the undated letter to the AC, attached as Appendix A to Blanton's memorandum, Blanton explains through a summarization of her medical history and work history, why she is appealing the ALJ's onset date determination and why her onset date should be June of 2010, "the point where [she] could not have gainful employment and income in a full-time job, began in 2010." ECF Doc. 15 at 5.  While not in those exact words, Blanton made the same arguments in her colloquy with the ALJ.

---

[2] The Supreme Court has noted a conflict among the circuits as to the judicial standard of review as to this issue.  *Sullivan v. Finkelstein*, 496 U.S. 617, 626 fn. 6 (1990).  This court must follow the standard set by *Caulder*, 791 F.2d at 875, which reiterated the ruling in *Cherry* that the court determines the materiality of new evidence for purposes of remand in a *de novo* proceeding as a matter of law.

1:19-cv-162-AW-HTC

Her letter to the ALC, dated August 15, 2018, and attached as Appendix B, contains a similar explanation and further asks the ALC to consider Dr. Tuli's letter (attached as Appendix C), stating the damage to her right eye began in 2010.  ECF Doc. 15 at 9-11.  As the Commissioner argues, Dr. Tuli's letter was before the AC; it was submitted to the AC by Blanton's counsel, William E. Horne, Jr.  T. 13, 278.  Thus, even if Blanton's letters were evidence, remand would still be unwarranted.  The evidence is not new and, for the reasons set forth above, even if new, would not have changed the result.

Accordingly, the undersigned RESPECTFULLY RECOMMENDS,

1. The decision of the Commissioner be AFFIRMED.

2. The clerk be directed to enter judgment in favor of the Commissioner and close the file.

DONE this 12th day of January, 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**